## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH SCHIMES,** | : | **No. 3:07cv872** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS BARRETT,** | : | |
| **CHRIS DOHERTY,** | : | |
| **GARY DIBILEO ,** | : | |
| **ROSEANN NOVEMBRINO,** | : | |
| **OFFICER JAY SAUNDERS,** | : | |
| **LEN KRESEFSKI,** | : | |
| **JERRY PHILLIPS,** | : | |
| **KATHLEEN RUANE,** | : | |
| **SHERRY FANUCCI,** | : | |
| **CITY OF SCRANTON NON** | : | |
| **UNIFORM PENSION BOARD,** | : | |
| **CITY OF SCRANTON,** | : | |
| **MICHAEL SAVITSKY, and** | : | |
| **MARGOLIS EDELSTEIN,** | : | |
| **Defendants** | : | |

## MEMORANDUM

_____Before the court are defendants' motions to dismiss the plaintiff's complaint

(Docs. 5-6).  Having been fully briefed, the matter is ripe for disposition.

**Background**

Plaintiff served in the United States Air Force from September 1, 1971 to June

6, 1974.  (Complaint (hereinafter "Complt.") at ¶ 20).  This service came during the

Vietnam War.  (Id.).  On May 14, 1979, plaintiff began work as a non-uniform

employee of the City of Scranton, Pennsylvania.  (Id. at ¶ 21).  He initially served as a temporary replacement worker, but on March 10, 1980 became a permanent employee eligible to participate in the City's non-uniform pension program.  (Id.).  He soon thereafter became a member of Local 2462 of the Clerical Workers' Union. (Id.).  As of December 2002, plaintiff had been employed by the City for a continuous period of twenty-two years and five months.  (Id. at ¶ 22).  He had been a contributing member of the Pension fund for twenty-one years and nine months. (Id.).

The five-year collective bargaining agreement between the City of Scranton and the Non-Uniform Clerical Workers' Union was scheduled to expire at midnight on December 31, 2002.  (Id. at ¶ 23).  On December 24, 2002, Scranton Mayor Chris Doherty circulated a proposed contract to union members.  (Id. at ¶ 24).  Union members need to approve this offer by December 31.  (Id.).  The proposed contract contained a provision that offered any employee younger than fifty-five years old who had twenty-five or more years of service to the city a one-time offer to retire by December 31, 2002 with healthcare benefits.  (Id. at ¶ 25).   The proposal also contained a healthcare provision that eliminated healthcare benefits for employees who retired on or after January 1, 2003.  (Id. at ¶ 26).  Lisa Moran, the City's Personnel Director, informed Clerical Union Local President Nancy Krake on December 30, 2002 that this offer of retirement at less than age 55 included both healthcare benefits and pension benefits.  (Id. at ¶ 27).  The contract that expired on

December 31, 2002, permitted workers with twenty-one years of service to purchase ten years of service time.  (Id. at ¶ 29).

Members of the local union voted to ratify the new collective bargaining agreement on December 30, 2002.  (Id. at ¶ 30).  This agreement contained the contract proposals permitting early retirement of employees who were younger than fifty-five years old and had twenty-five years of service.  (Id.).  Plaintiff, who was younger than fifty-five and had more than twenty-one years of service, alleges that he accepted this one-time offer from the city by retiring on December 31, 2002.  (Id. at ¶ 31).  He submitted an application for a pension to the City's Non-Uniform Pension Board on that day.  (Id. at ¶ 32).  On January 13, 2003, Non-Uniform Pension Board Solicitor Michael T. Savitsky wrote plaintiff to inform him that he was ineligible for a pension.  (Id. at ¶ 33).  This letter, plaintiff claims, did not constitute an adjudication by the board.  (Id. ¶ 34).  Plaintiff did not receive notice, a hearing or an opportunity to be heard by the Pension Board.  (Id.).

Plaintiff had an immediate family member who suffered from a serious medical condition.  (Id. at ¶ 35).  In need of medical assistance for this person, plaintiff contacted his supervisor at the City to request reinstatement to his employment. (Id.).  The City refused to rehire him, leaving him without a job, healthcare or pension.  (Id.).  Plaintiff then sought a hearing with the Pension Board in an attempt to arrange the purchase of military service time or pension time due to his employment with the City.  (Id. at ¶ 36).  After repeated attempts to arrange such a

3

hearing, the Board informed plaintiff that his case would be discussed at the Non-Uniform Pension Board meeting on March 24, 2004.  (Id. at ¶ 37).  Plaintiff attended this meeting, bringing with him a privately hired stenographer.  (Id. at ¶ 38).  The Board's secretary, Kay Connolly, informed him that his hearing had been cancelled. (Id.).  At this meeting, the Board consisted of Len Kresefski, the representative sent by Mayor Doherty, Jerry Phillips, representative of City Controller Novembrino, Jay Saunders, who represented City Council President DiBileo, and two employee representatives.  (Id. at ¶ 39).  This board, plaintiff contends, did not meet the statutory requirements.  (Id. at ¶ 39).  Nevertheless, the members of the board, after a presentation from solicitor Savitsky, voted 4 to 1 to deny plaintiff's pension application.  (Id. at ¶ 40).  A letter sent on April 22, 2004 by Savitsky to Thomas Barrett, head of the Non-Uniform Pension Board, opined that plaintiff was ineligible to purchase time towards his pension because he was not fifty-five years old.  (Id. at ¶ 41).

Plaintiff appealed this decision to the Lackawanna County Court of Common Pleas, arguing that the Board had been improperly constituted when it came to its decision, that he had been denied due process under state and federal law and that the Board's decision was improper.  (Id. at ¶ 43).  On October 1, 2004, the Court of Common Pleas directed the Board to conduct a hearing within forty-five days.  (Id. at ¶ 44).  The Board finally held a hearing on plaintiff's pension on February 2, 2005. (Id. at ¶ 45).  Present at this hearing were Roseann Novembrino, the City Controller,

Thomas Barrett, the Board President and Jay Saunders, who represented the City Council.  (Id.).  The Mayor, City Council President and one of the employees representing workers did not attend the meeting.  (Id. at ¶ 46).  As part of the evidence in the hearing, Solicitor Savitsky introduced a Scranton City Council Ordinance promulgated on February 24, 2003.  (Id. at ¶ 49).  That ordinance approved a "'one time offer to members of the non-uniform pension plan provided that the member was an active employee of the City of Scranton up to December 31, 2002, had worked for the City of Scranton for twenty five (25) years or more as of December 31, 2002, is less than 55 years of age as of December 31, 2002, and provided that the said member retired by December 31, 2002.'" (Id. at ¶ 50).  Plaintiff contends that the language of this ordinance excludes him for eligibility and "is materially different from the language of the offers of December 24 and 30 of 2002." (Id. at ¶ 51).  The new language, he alleges, abrogated normal procedures allowing employees to purchase pension time at retirement.  (Id. at ¶ 51).   Plaintiff argued to the hearing examiner that he should have been able to purchase military service time and pension time, and thus was eligible to retire with pension and health benefits.  (Id. at ¶¶ 53-54).

On June 30, 2005, hearing officer Kevin O'Hara recommended that the Board deny plaintiff's application.  (Id. at ¶ 55).  O'Hara also recommended that Thomas Barrent, the Board President, not participate in the Board's decision.  (Id.).  He had testified in the hearing against the plaintiff.  (Id.).  On July 27, 2005, the Board voted

5

to deny plaintiff pension benefits.  (Id. at ¶ 56).  Plaintiff then filed an appeal with the

Lackawanna County Court of Common Pleas, arguing that the Board had improperly

denied his pension.  (Id. at ¶ 58).  The Court sustained his appeal on December 30,

2005, finding that plaintiff was entitled to purchase enough additional service time to

qualify for retirement.  (Id. at ¶ 59).  Plaintiff alleges that sometime in January 2006,

Defendants Doherty, Gatelli, Ruane, Fannuci and Novembrino decided together to

appeal the Court of Common Pleas decision to Pennsylvania Commonwealth Court.

(Id. at ¶ 60).  Defendants Savitsky and Margolis then filed a motion for

reconsideration in the Court of Common Pleas and an appeal in the Commonwealth

Court.  (Id.).

Plaintiff contends that the defendants filed their motion for reconsideration in

an untimely fashion, and that the court failed to enter a decision on that motion within

thirty days of the original decision, as required by Pennsylvania law.  (Id. at ¶ 61).

Defendants Savitsky and Margolis requested an extension of time to file their brief

and record on appeal as they awaited this decision.  (Id. at ¶ 63).  The

Commonwealth Court granted this requested extension, giving the defendants until

May 26, 2006 to file their brief.  (Id. at ¶ 64).  On May 10, 2006, plaintiff, acting *pro*

*se*, filed a praecipe to strike defendants' motion for reconsideration as untimely.  (Id.

at ¶ 65).  According to the plaintiff, the Clerk of Judicial Records entered this order

on the same day, and he served it on defendants Savitsky and Margolis.  (Id.).

Nevertheless, plaintiff contends, Savitsky and Margolis filed an application for an

extension of time to file their brief in the Commonwealth Court, arguing that they await a decision on the motion for reconsideration.  (Id. at ¶ 66).  Defendants filed this motion, even though they were aware that their reconsideration motion had been stricken in the Court of Common Pleas.  (Id.).  On May 25, 2006, the Commonwealth Court ordered the defendants to file their brief and the record by June 26, 2006.  (Id. at ¶ 67).  Defendants filed their brief in a timely fashion.  (Id. at ¶ 68)

On July 20, 2006, the Commonwealth Court scheduled oral argument on the Board's appeal for September 14, 2006.  (Id. at ¶ 71).  Plaintiff filed a motion with the Commonwealth Court on July 24, 2006 requesting permission to file his brief, supplemental record and a request to quash the appeal on August 23, 2006.  (Id. at ¶ 72).  He aimed to prevent further delays in the case by this motion.  (Id.).  On August 3, 2006, Defendants Savitsky and Margolis filed a motion in the Commonwealth Court to continue the scheduled oral argument.  (Id. at ¶ 73).  Defendant Savitsky represented that he had secured a pre-paid vacation for that date.  (Id.).  Plaintiff alleges that the motion misrepresented his concurrence.  (Id.).  The Commonwealth Court then rescheduled argument for the December 2006 term.  (Id. at ¶ 74).  Plaintiff filed a motion for reconsideration of the court's order delaying oral argument, and on August 28, 2006 the court rescheduled argument for November 13, 2006.  (Id. at ¶¶ 74-75).  On December 18, 2006, the Commonwealth Court affirmed the decision of the Court of Common Pleas, finding that plaintiff was entitled to his pension pursuant to the City's original offer of early retirement.  (Id. at

¶ 77).  Despite this court victory, plaintiff contends that he has suffered from and

continues to suffer from "severe injury, damage, loss, and harm" from "violation of

his civil and constitutional rights, physical and emotional injuries, deprivation of

property, loss of income, medical expense" and legal expenses.  (Id. at ¶ 80).

On May 14, 2007, plaintiff filed the instant complaint.  In count one, plaintiff

alleges that the individual defendants, in their individual and official capacities, acted

under color of state law to deprive him of his procedural and substantive due

process rights under the Fifth and Fourteenth Amendments to the United States

Constitution.  The count also contends that Defendant City of Scranton Non-Uniform

Pension Board denied plaintiff's due process rights to notice and a hearing about his

pension.  Count Two alleges that the individual defendants, individually and in their

official capacities, violated plaintiff's procedural and substantive due process rights

under the Pennsylvania Constitution, and that the Board violated his state due

process rights to notice and a hearing on his pension claims.  Count Three alleges a

deprivation of plaintiff's property rights in his pension against the Board, Mayor

Doherty individually and in his official capacity as mayor, the City and Defendant

DiBileo, individually and in his official capacity as President of the Scranton City

Council and Member of the Non-Uniform Pension Board.  Count Four contends that

the defendants conspired to deprive plaintiff of his civil rights.  Count Five raises an

equal protection claim against all of the defendants.  Count Six also raises a

substantive due process claim, contending that defendants' actions were "calculated,

intentional, and deliberate, motivated by bad faith or improper motive." (Id. at ¶ 99). Count Seven alleges that the municipal defendants were aware of the individual defendants' efforts to deprive plaintiff of his property rights and did nothing to prevent such action. (Id. at ¶ 102). As relief, plaintiff seeks damages and an injunction prohibiting the City of Scranton from enforcing certain ordinances and policies.

After service of the complaint, defendants filed motions to dismiss (Docs. 5-6). The parties briefed then briefed the issue, bringing the case to its present posture

## Jurisdiction

As this case is brought pursuant to 42 U.S.C. §1983, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We  have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## Discussion

Defendants argue that plaintiff's case should be dismissed on several grounds.  We shall address each in turn.

## Statute of Limitations

Defendants argue that all of plaintiff's claims are barred by the statute of limitations. Federal courts have held that state law on the statute of limitations governs personal-injury cases in a Section 1983 action. See Reitz v. County of Bucks, 129 F.3d 139, 143 (3d Cir. 1997); Wallace v. Kato, 127 S. Ct. 1091,1094

(2007) (holding that "Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts."). Pennsylvania law requires that the plaintiff commence his action within two years of his injury. See 42 PA. CONS. STAT. ANN. §5524(7) (establishing a two-year statute of limitations for "any . . . action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct"). Still, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace, 127 S. Ct. at 1095. Thus, under federal law, "it is 'the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action . . . that is, when 'the plaintiff can file suit and obtain relief.'" Id. (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferber Corp. of Cal., 522 U.S. 192, 201 (1997)). In other words, "[a] section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).

Plaintiff did not have to file his claim in the Court of Common Pleas or advance an administrative claim before he could raise his claim under Section 1983. "Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court." Porter v. Nussle, 534 U.S. 516, 523 (2002). Indeed, "[t]he Supreme Court has consistently noted that

10

exhaustion of state remedies, whether judicial or administrative, is not required prior

to the commencement of an action under 42 U.S.C. § 1983 in federal court."

Hochman v. Board of Education, 534 F.2d 1094, 1096 (3d Cir. 1976).  The aim of

Section 1983 is to offer a remedy in federal court for plaintiffs whose civil rights are

violated "'supplementary to any remedy any State might have.'" Id. (quoting Monroe

v. Pape, 365 U.S. 167, 183 (1961).  Part of the reason for this rule was Congress's

recognition of the central role of federal courts in protecting federal constitutional

rights.  Id.

Plaintiff's claim arises under Section 1983 and alleges violations of his

constitutional rights.  Accordingly, he could have brought his claim in federal court

even as his action in state court to secure his benefits proceeded.  See Monroe, 365

U.S. at 183 (holding that "[t]he federal remedy" in a Section 1983 action "is

supplementary to the state remedy, and the latter need not be first sought and

refused before the federal one is invoked.").  The statute of limitations begins to run

when the action that causes plaintiff's alleged damage occurs, not when a state or

administrative procedure to address those damages terminates.  See Delaware

State College v. Ricks, 449 U.S. 250, 261 (1980) (finding that plaintiff's claim, filed

after the conclusion of a grievance procedure examining a decision that denied him

tenure was untimely because "the grievance procedure, by its nature, is a remedy for

a prior decision, not an opportunity to influence that decision before it is made.").

Accordingly, "the pendency of a grievance, or some other method of collateral review

of an employment decision, does not toll the running of the limitations periods."

Ricks, 449 U.S. at 261.

Plaintiff's claims arise out of the Non-Uniform Pension Board's denial of his

pension benefits.  He contends that the Board denied him a pension to which he was

entitled, and that Board members did not make an honest mistake in doing so.

Solicitors for the board approved such action, though they knew that the denial was

improper.  The Scranton City Council also participated in these efforts to deprive

plaintiff of his rights, passing an ordinance that attempted to prevent him from

purchasing the seniority necessary to retire.  These actions, plaintiff alleges, were

part of a larger conspiracy to deny him his property rights.  They occurred from the

end of 2002 until April of 2004, when the Board finally denied plaintiff's claim.

Plaintiff then filed an action in state court to reverse that decision.  At its latest, then,

plaintiff had knowledge of his injury and its source in April 2004.  As plaintiff points

out in his brief, "it was now clear, on April 22, 2004, the Defendants Mayor, President

of the City Council, Controller and their improperly authorized representatives acting

under color of law as the illegally composed Non-Uniform Pension Board, along with

gross negligence and dilatory tactics of the Local Agency Solicitor, were operating to

deny Schimes his property right without due process."  (Brief in Opposition to

Defendants' Motion to Dismiss (Doc. 11) at 22-23).   Since he did not file suit until

May 14, 2007, the statute of limitations appears to have run on plaintiff's claim

related to the Board's decisions.

Plaintiff contends that his claims are saved from being barred by the statute of limitations by the continuing violations doctrine.  This doctrine provides "an 'equitable exception to the timely filing requirement.'"  Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)).  By the terms of the doctrine, "'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.'"  Id. (quoting Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)).  To fit within the doctrine, a defendant's actions must be "'more than the occurrence of isolated or sporadic acts.'"  Id. (quoting West, 45 F.3d at 755)).  Courts utilize three factors to determine whether the acts complained of qualify: "(1) subject matter–whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency–whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence–whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of continuing intent to discriminate."[1]  Id.  Once a plaintiff establishes that the doctrine

---

[1]The third of these factors requires a court to "consider the policy rationale behind the statute of limitations.  That is, the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing

applies and that one violation occurred within the period established by the statute of

limitations, a plaintiff may then "offer evidence of, and recover for, the entire

continuing violation." West, 45 F.3d at 755.  Courts have applied this doctrine in the

context of Section 1983 claims.  See Centifanti v. Nix, 865 F.2d 1422, 1432-33 (3d

Cir. 1989) (finding that plaintiff's Section 1983 claim seeking reinstatement to the bar

in Pennsylvania was not barred by the statute of limitations because "[plaintiff]

remains suspended from the practice of law, and thus he alleges what is in essence

a continuing wrong."); Cowell, 263 F.3d at 293 n.5 (establishing that the continuing

violations "doctrine is an equitable one and requires a factual analysis that will be

different in each case.").

      Here, the plaintiff has alleged a continuing course of conduct that, if proved,

would entitle him to claim the equitable relief provided by the continuing violation

doctrine.  All of the misconduct he alleges is related to a single subject matter, the

denial of his pension by various Scranton officials.  That misconduct did not

represent a series of isolated incidents, but as alleged by the plaintiff constituted a

continuous attempt over several years to prevent him from exercising his alleged

property right in his pension.  Though, as we have laid out and as plaintiff admits, the

acts of the defendants certainly made him aware of the basis of his claim more than

two years before he filed it, plaintiff also points to additional alleged violations by

defendants during the litigation over his claims that represented the continuing

their claims." Cowell 263 F.3d at 295.

attempts of the City and the Pension Board to achieve their goal of preventing him from recovering the funds due him.  Accordingly, due to the continuing violation doctrine, plaintiff's claims are not barred by the statute of limitations.[2]  We will deny defendants' motion on these grounds.

**Plaintiff's Claims**

Defendants also allege that plaintiff has not stated any claims upon which relief can be granted, regardless of the statute of limitations.

### i. Procedural Due Process

Plaintiff contends that defendants illegally employed proxies to cast their votes through the City's non-uniform pension board, and in doing so violated plaintiff's procedural due process rights to meaningful notice and a hearing before depriving him of his pension.  To prevail on a procedural due process claim, a plaintiff must show that "a person acting under color of state law deprived him of a protected property interest" and that "the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process."  DeBlasio v. Zoning Board of Adjustment, 53 F.3d 592, 597 (3d Cir. 1995).  To be adequate for due process purposes, "deprivation of property [must] 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  Midnight Sessions, Ltd. v. City of

---

[2]We note, too, that the equitable nature of the doctrine counsels in favor of applying it in this case: plaintiff first attempted to use administrative procedure and the state courts to obtain his pension, and requiring plaintiff to raise other claims during the pendency of those proceedings would hardly be fair to him.

Philadelphia, 945 F.2d 667, 680 (3d Cir. 1991) (quoting Cleveland Board of

Education v. Loudermill, 470 U.S. 532, 542 (1985)).  "[T]he opportunity to be heard

must be at a meaningful time and in a meaningful manner."  Id.

The plaintiff alleges that the decisions of Scranton officials and the non-

uniform pension board unconstitutionally deprived him of his pension rights.  The

parties do not dispute whether plaintiff's interest in his pension was a protected

property interest, but instead disagree about whether the procedure provided plaintiff

when the City denied his pension was adequate.  The Third Circuit Court of Appeals

has found that "a state provides adequate due process when it provides 'reasonable

remedies to rectify a legal error by a local administrative body.'"  Bello v. Walker, 840

F.2d 1124, 1128 (3d Cir. 1988) (quoting Cohen v. City of Philadelphia, 736 F.2d 81,

86 (3d Cir. 1984).  Here, plaintiff was able to appeal the decisions of the City and the

Board in the courts of Pennsylvania.  He raised his claims, received a hearing and

ultimately prevailed.  Such remedies allowed plaintiff a reasonable opportunity to

rectify any legal error caused by the decision of Scranton pension administrators.

Plaintiff cannot therefore state a procedural due process claim upon which he would

be entitle to relief.  We will therefore dismiss his procedural due process claim.

**ii.  Substantive Due Process**

Defendants argue that we should dismiss plaintiff's substantive due process

claims.  On the issue of substantive due process, the Supreme Court has

emphasized that "the cognizable level of executive abuse of power [is] that which

16

shocks the conscience." <u>City of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998).

Only conscience-shocking behavior entitles a plaintiff to relief in the Fourteenth

Amendment Context.  Behavior which could be characterized as negligent does not

rise to the level of a constitutional violation under this standard: "conduct intended to

injure in some way unjustifiable by any government interest is the sort of official

action most likely to rise to the conscience-shocking level." <u>Id.</u> at 849.

Here, plaintiff alleges that the defendants deliberately undertook a course of

action designed to injure him by preventing him from obtaining a pension.  Such

conduct, if proved, would clearly be more than negligent.  Indeed, if plaintiff could

demonstrate that the City Council, the Pension Board and City Officials unjustifiably

undertook a series of policies designed to prevent the plaintiff from receiving benefits

to which he had a right, a jury could conclude that the defendants engaged in

"conduct intended to injure in some way unjustifiable by any government interest"

and find such official behavior conscience-shocking.  <u>Id.</u>  Accordingly, we will deny

the defendants' motion to dismiss on plaintiff's substantive due process claim.

### iii.  Equal Protection

Defendants also seek to dismiss plaintiff's equal protection claim.  That claim

is based on a "class of one" theory.  Under that doctrine, a plaintiff may obtain relief

for equal protection violations "where the plaintiff alleges that she has been

intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment." <u>Village of Willowbrook v. Olech</u>, 528

U.S. 562, 564 (2000).  The Third Circuit has held that a plaintiff asserting a "class of one" claim "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

Defendants deny that plaintiff has made out an equal protection claim.  In their initial briefs, defendants argued that plaintiff had not alleged that he was treated differently because of his race or other protected category, and therefore could not have stated an equal protection claim.  Perhaps recognizing that plaintiff could state a "class of one" claim under such circumstances, defendants then filed a supplemental brief, arguing that plaintiff had also not made out a "class of one" claim.

Plaintiff's contention is that the City passed legislation limiting access to pensions for certain workers which were aimed solely at him.  He also argues that the reason for this particular legislation was animus towards him, and not because of an attempt to promote any rational interest of the City.  We find that plaintiff has stated a claim under the "class of one" theory of equal protection.  He alleges that he was the only person contemplating retirement whose status was changed by the particular ordinance in question, that the City passed that ordinance because it would be aimed at him and that no rational reason other than to harm him existed for the City's action.  If plaintiff can prove these facts, he could prevail on his class of

18

one equal protection claim.  We will therefore deny the defendants' motion on this point.

### iv.  Conspiracy

Defendants also seek dismissal on plaintiff's claims that they conspired to violate his constitutional rights.  "To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).  Defendants argue that plaintiff has not stated a claim for violation of his constitutional rights, and therefore cannot prevail on his conspiracy claim.

Since we have found that plaintiff has stated a claim for violation of his constitutional rights, we cannot adopt defendants' reasoning on this matter. Defendants apparently do not dispute that plaintiff has alleged that two or more of the defendants reached an agreement; we therefore conclude that plaintiff has stated a claim for conspiracy under Section 1983.  We will deny the defendants' motions on this point.

### iii.  Municipal Liability

Torts committed by employees do not make a municipality liable and "a local governing body can be held liable only for an official policy or custom." San Filippo v. Bongiovanni, 30 F. 3d 424, 445 (3d Cir. 1994).  Under the standard first articulated

19

in <u>Monell v. Dept. of Soc. Servs.</u>, "local governing bodies . . . can be sued directly under §1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell v. Dept. of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 690 (1978).  Thus, "[a] public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 144 (3d Cir. 1997).  Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 214 (3d Cir. 2001) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).

The official policy of which plaintiff complains was the City Council's decision to craft an ordinance aimed specifically to exclude him from pension benefits, as well as the City's actions to deny him the pension through its instrumentalities and to pursue such a policy through bad-faith actions in the courts.  The Scranton City Council establishes the City's official policies and programs.  Such actions therefore represent the official policy or custom of the City, and if plaintiff can prove the facts which he alleges, municipal liability would be appropriate.  We will therefore deny the defendants' motion on these grounds.

### iv.  Immunity for Certain Defendants

Plaintiff alleges in Count III of his complaint that Defendants Doherty, "individually and in his capacity as Mayor of the City of Scranton and Member of the City of Scranton Non-Uniform Pension Board" and Dibelio, "individually and in his official capacity as President of Scranton City Council and Member of the City of Scranton Non-Uniform Pension Board" together "abused their discretion" in adopting a resolution that applied only to plaintiff.  (Complt. at ¶ 91).  Those defendants contend that they are entitled to absolute immunity for their actions in adopting this ordinance.

Absolute immunity from suit exists for "members of local legislative bodies for actions taken in a purely legislative capacity."  Acierno v. Cloutier, 40 F.3d 597, 610 (3d Cir. ); see also, Aitchison v. Raffiani, 708 F.2d 96, 99 (3d Cir. 1983) (holding that "members of a municipal council acting in a legislative capacity are absolutely immune from damage suits under section 1983" and "section 1985(3) as well.").  If local legislators and officials have "a combination of legislative and administrative powers, "'[i]t is only with respect to the legislative powers delegated to them by the state legislatures that the members of local governing boards are entitled to absolute immunity.'"  Id.  (quoting Ryan v. Burlington County, N.J., 889 F.2d 1286, 1290 (3d Cir. 1989)).   A court must determine "whether the members of the [local legislative body] were acting in an administrative or legislative capacity when they" undertook the act in question.  Id.  To qualify as a legislative decision entitled to immunity, "(1)

21

the action must be 'substantively' legislative, which requires that it involve a policy-making or line-drawing decision; and (2) the action must be 'procedurally' legislative, which requires that it be undertaken through established legislative procedures." Id. In most cases, "decisions affecting a single individual or a small number of people do not implicate legislative power and, thus, such actions are administrative in nature." Id.; see also, Ryan v. Burlington County, 1290-1291 (3d Cir. ) (holding that "[l]egislative acts are those which involve policy-making decision of a general scope, or, to put it another way, legislation involves line-drawing.").

Such immunity also applies to other local officials for "acts undertaken in a legislative capacity." Carver v. Foerster, 102 F. 3d 96, 100 (3d Cir. 1996). Such immunity can apply to mayors, as well as others "acting in direct assistance of legislative activity." Aitchison, 708 F.2d at 99. On the other hand, "[a]ctions taken in a[n] executive or administrative capacity are not entitled to absolute immunity." Carver, 102 F.3d at 100. Still, "[a]n unconstitutional or illegal course of conduct by county government does not fall within the doctrine of absolute immunity merely because it is connected to or followed by a vote of a county board." Id. at 101. A mayor may be liable for his actions in influencing a city legislature as part of a broader unconstitutional scheme to deprive a plaintiff of his rights. Id.

Here, the legislation of which plaintiff complains was enacted on February 24, 2003. That ordinance provided that the Scranton City Council approved a "'one time offer to members of the non-uniform pension plan provided that the member was an

active employee of the City of Scranton up to December 31, 2002, and had worked for the City of Scranton for twenty-five (25) years or more as of December 31, 2002, is less than 55 years of age as of December 31, 2002, and provided that said member retired by December 31, 2002."  (Complt. at ¶ 50).  Plaintiff contends that this language was designed to exclude him, and applied only to him.  The Act in question is clearly a legislative act, since it is not aimed explicitly at any particular individual and enacts a public policy adopted by the City.  To the extent that defendants participated in enacting this ordinance, they are entitled to legislative immunity.  We recognize that plaintiff contends that the act was aimed entirely at him, but in its language, the act would apply to anyone who fit the enactment's requirements.  Since these are the only allegations against defendants Doherty and Dibelio, and they appear thus to have acted simply to enact the offending legislation, we will grant the motion to dismiss them from the case.

**Conclusion**

For the reasons stated above, we will grant the defendants' motions to dismiss in part and deny them in part.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH SCHIMES,** | : | **No. 3:07cv872** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS BARRETT,** | : | |
| **CHRIS DOHERTY,** | : | |
| **GARY DIBILEO ,** | : | |
| **ROSEANN NOVEMBRINO,** | : | |
| **OFFICER JAY SAUNDERS,** | : | |
| **LEN KRESEFSKI,** | : | |
| **JERRY PHILLIPS,** | : | |
| **KATHLEEN RUANE,** | : | |
| **SHERRY FANUCCI,** | : | |
| **CITY OF SCRANTON NON** | : | |
| **UNIFORM PENSION BOARD,** | : | |
| **CITY OF SCRANTON,** | : | |
| **MICHAEL SAVITSKY, and** | : | |
| **MARGOLIS EDELSTEIN,** | : | |
| **Defendants** | : | |

**ORDER**

_____**AND NOW**, to wit, this 27th day of March 2008, the defendants' motions to

dismiss plaintiff's complaint (Docs. 5-6) are hereby **GRANTED** in part and **DENIED**

in part, as follows:

1) Defendants' motion to dismiss plaintiff's procedural due process claim are

hereby **GRANTED**;

2) Defendants' motion to dismiss the claim against Defendants Doherty and

24

Dibileo are hereby **GRANTED**; and

3) Defendants' motions are denied in all other respects.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**
