# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH SCHIMES,** | : | **No. 3:07cv872** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS BARRETT,** | : | |
| **ROSEANN NOVEMBRINO,** | : | |
| **OFFICER JAY SAUNDERS,** | : | |
| **LEN KRESEFSKI,** | : | |
| **JERRY PHILLIPS,** | : | |
| **KATHLEEN RUANE,** | : | |
| **SHERRY FANUCCI,** | : | |
| **CITY OF SCRANTON NON** | : | |
| **UNIFORM PENSION BOARD,** | : | |
| **CITY OF SCRANTON,** | : | |
| **MICHAEL SAVITSKY, and** | : | |
| **MARGOLIS EDELSTEIN,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are the parties' motions for summary judgment. Having been fully briefed, the matters are ripe for disposition.

**Background**

This case concerns the employment of Plaintiff Joseph Schimes with Defendant City of Scranton ("the City"). Plaintiff began working for the City as a non-uniform employee on May 14, 1979. (Statement of Material Facts in Support of Motion for Summary Judgment by Thomas Barrett, Roseann Novembrino, Judy Gatelli, Officer Jay Saunders, Len Kresefski, Jerry Phillips, Kathleen Ruane, Sherry

Fanucci, City of Scranton Non Uniform Pension Board and the City of Scranton (Doc. 53) (hereinafter "City Defendants' Statement") at ¶ 1). He started as a temporary replacement worker. (Id.). Plaintiff became a permanent non-uniform employee of the City on March 10, 1980. (Id. at ¶ 4). He thereafter was eligible to participate in the City's non-uniform pension plan. (Id. at ¶ 5). At the time he became a permanent employee, plaintiff also became a member of the union representing non-uniform clerical personnel of the city, Local 2462. (Id. at ¶ 6). Plaintiff remained a member of the union until 2002. (Id.). Plaintiff served active duty in the United States Air Force from 1971-1974. (Id. at ¶ 7). He left active military duty in 1974 and did not commence any employment with the City until 1979. (Id. at ¶ 8).

In December 2002, plaintiff had been employed by the City for twenty-two years and five months and been a member of the Union and contributing member of the pension fund for twenty-one years and nine months. (Id. at ¶ 9). The collective bargaining agreement ("CBA") between the city and the clerical union was scheduled to expire on December 31, 2002. (Id. at ¶ 10). The parties disagree about whether the CBA established the regular retirement age for union members at age 55, or whether members who were younger than 55 could purchase additional pension time and retire. (Compare City Defendants' Statement at ¶ 11 with Plaintiff's Response to Facts of Defendants Barrett Et Al (Doc. 64) (hereinafter "Plaintiff's Answer to City Defendants' Statement") at ¶ 11). Plaintiff was fifty years old at that

2

time.  (Plaintiff's Statement of Material Facts (Doc. 61) at ¶1).  The CBA provided, in Article XXXIII, Section 3(D), that "Effective January 1, 1999, bargaining unit members shall be permitted to purchase 10 years of pension service after twenty-one years of actual service."  (City Defendants' Statement at ¶ 12).

Anticipating the expiration of the CBA, in December 2002 the City began negotiations with the union.  (Id. at ¶ 13).  These negotiations included consideration of a one-time offer to allow any employee who currently had twenty-five years or more of service to the City, but was less than fifty-five years old to retire by December 31, 2002 with healthcare benefits and their pension.  (Id.).  The City approved and adopted this offer by ordinance on February 25, 2003.  (Id. at ¶ 14; Plaintiffs' Answer to City Defendants' Statement at ¶ 14).  The Court of Common Pleas of Lackawanna County, Pennsylvania, found that the ordinance passed in February 2003 differed materially from the offer extended in 2002.  (Id.).  The ordinance "unambiguously" excluded the plaintiff from participation in the program, but the offer in 2002 did not.  (Id.).

Plaintiff applied for retirement on December 30, 2002.  (City Defendants' Statement at ¶ 16).  The parties disagree about whether he applied under the terms of the Council's February 2003 ordinance or the offer extended in 2002.  (Id. at ¶ 16; Plaintiffs' Response to City Defendants' Statement at ¶ 16).  Plaintiff insists that he applied under the terms of the 2002 offer.  (Id.).  The parties agree that Schimes intended to apply under this program.  (City Defendants' Statement at ¶ 17).

3

Plaintiff did not have twenty-five years of service, but argued that under the CBA he could purchase the service time needed to be eligible for the offer. (Id. at ¶ 18; Plaintiff's Response to City Defendants' Statement at ¶ 18). The Court of Common Pleas found that plaintiff was entitled to purchase this service time under the contract. (City Defendants' Statement at ¶ 19). City officials nevertheless maintain that the one-time offer was not intended to apply to persons in plaintiff's situation. (Id. at 20; Plaintiffs' Response to Defendants' Statement at ¶ 20).

Plaintiff initially sought an application for the pension from Thomas Barrett, president of the non-uniform pension board. (Defendants' Statement at ¶ 21). Barrett consulted with Defendant Michael Savitsky, the city solicitor, who advised plaintiff that he was not eligible for the one-time offer. (Id.). Plaintiff nevertheless submitted an application on December 31, 2002. (Id. at ¶ 22). The application did not contain any documentation demonstrating plaintiff's years of active military service. (Id. at ¶ 23). After he retired, however, plaintiff attempted to purchase military service time by informing Barrett that he intended to do so. (Id. at ¶ 24). Savitsky notified plaintiff by letter that he was ineligible for a pension under the December 2002 offer because he did not have twenty-five years of service to the City and was not qualified to purchase his military time. (Id. at ¶ 25).

On March 24, 2004, the Scranton Non-Uniform Pension Board voted 4-1 to deny plaintiff's pension. (Id. at ¶ 26). The parties dispute whether the Board relied on the advice of its solicitor in making this decision. (Id. at ¶ 27; Plaintiffs' response

4

to City Defendants' Statement at ¶ 27).  Savitsky sent a letter to Thomas Barrett on

April 22, 2004, providing a copy to the plaintiff.  (Defendants' Statement at ¶ 28).

This letter averred that plaintiff was not allowed to purchase ten years of pension

service because he was not fifty-five years old.  (Id. at ¶ 28).

Plaintiff appealed the Pension Board's opinion to the Lackawanna County

Court of Common Pleas.  (Id. at ¶ 29).  On October 1, 2004, Judge S. John Cottone

directed the Board to conduct a hearing on plaintiff's claims.  (Id.).  The hearing

occurred on February 2, 2005 before hearing examiner Kevin O'Hara.  (Id. at ¶ 30).

Plaintiff testified at this hearing.  (Id.).  O'Hara recommended that plaintiff was not

qualified for a pension in June 2005.  (Id. at ¶ 31).  Plaintiff appealed this decision

and the Lackawanna County Court of Common Pleas reversed and awarded him a

pension.  (Id. at ¶ 32).  The Commonwealth Court of Pennsylvania denied the

Board's appeal of this decision on December 18, 2006.  (Id. at ¶ 33).

Plaintiff did not submit a check with his application to buy additional time.  (Id.

at ¶ 34).  The parties dispute when plaintiff first raised the issue of purchasing such

additional time.  (Compare City Defendants' Statement at ¶ 35; Plaintiff's Response

to City Defendants' Statement at ¶ 35).  The City defendants insist that he did not

raise this issue until February 16, 2004.  (City Defendants' Statement at ¶ 35).  The

plaintiff insists he discussed such purchase "sometime between January 2003 and

February 16, 2004.  (Plaintiff's Response to City Defendants' Statement at ¶ 35).  In

any case, plaintiff did not pay for the purchase of any additional time until January

2007, after the Commonwealth Court denied the Board's appeal. (City Defendants' Statement at ¶ 36).

Pension Board members frequently appointed proxies to serve for them when they were unable to attend meetings, though plaintiff disputes the frequency and history of that practice. (City Defendants' Statement at ¶ 37; Plaintiff's Response to City Defendants' Statement at ¶ 3). There were other individuals besides plaintiff who were younger than fifty-five but who lacked twenty-five years of service to the City on December 31, 2002. (City Defendants' Statement at ¶ 38). These individuals were likewise deemed ineligible for the early-retirement offer. (Id.). Plaintiff was the only worker in that situation who applied for a pension on December 31, 2002; he contends that he was the only worker who discussed the situation with City officials. (Plaintiffs' Response to City Defendants' Statement at ¶ 38). Several individuals who were similarly situated to plaintiff retired after he won his appeal. (Id. at ¶ 39). Five workers, Mary Ann Kitlas, Muareen Biglin, John Hazzourri, Kathy Ruane and Janice Gilhooley ultimately retired under this program. (City Defendants' Statement at ¶ 40).

Plaintiff filed a seven-count complaint on May 14, 2007. (See Doc. 1). In count one, plaintiff alleges that the individual defendants, in their individual and official capacities, acted under color of state law to deprive him of his procedural and substantive due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. The count also contends that Defendant City of Scranton

6

Non-Uniform Pension Board denied plaintiff's due process rights to notice and a hearing about his pension. Count Two alleges that the individual defendants, individually and in their official capacities, violated plaintiff's procedural and substantive due process rights under the Pennsylvania Constitution, and that the Board violated his state due process rights to notice and a hearing on his pension claims. Count Three alleges a deprivation of plaintiff's property rights in his pension against the Board, Mayor Doherty individually and in his official capacity as mayor, the City and Defendant DiBileo, individually and in his official capacity as President of the Scranton City Council and Member of the Non-Uniform Pension Board. Count Four contends that the defendants conspired to deprive plaintiff of his civil rights. Count Five raises an equal protection claim against all of the defendants. Count Six also raises a substantive due process claim, contending that defendants' actions were "calculated, intentional, and deliberate, motivated by bad faith or improper motive." (Id. at ¶ 99). Count Seven alleges that the municipal defendants were aware of the individual defendants' efforts to deprive plaintiff of his property rights and did nothing to prevent such action. (Id. at ¶ 102). As relief, plaintiff seeks damages and an injunction prohibiting the City of Scranton from enforcing certain ordinances and policies.

The defendants filed motions to dismiss the complaint. On March 27, 2008, the court issued a memorandum and order granting in part and denying part the defendants' motions. The court dismissed plaintiff's procedural due process claim

and plaintiff's claims against Chris Doherty, Scranton's Mayor and Gary Dibileo, President of the City Council, and denied the motion in all other respects. The parties then engaged in discovery. They filed the instant motions at the close of discovery. After the parties briefed the issues, the court held oral argument, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. §1983, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

**A.  The Defendants' Motions**

The City defendants and the individual defendants seek summary judgment on all of plaintiff's claims and advance a number of grounds.  The parties raise substantially the same grounds using the same legal arguments, and as the court's opinion will dispose all of the remaining claims, the court will address both motions at the same time.

### i. Statute of Limitations

Federal courts have held that state law on the statute of limitations governs personal-injury cases in a Section 1983 action. See Reitz v. County of Bucks, 129 F.3d 139, 143 (3d Cir. 1997); Wallace v. Kato, 549 U.S. 384, 387 (2007) (holding that "Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts."). Pennsylvania law requires that the plaintiff commence his action within two years of his injury. See 42 PA. CONS. STAT. ANN. §5524(7) (establishing a two-year statute of limitations for "any . . . action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct"). Still, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace, 549 U.S. at 388. Thus, under federal law, "it is 'the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action . . . that is, when 'the plaintiff can file suit and obtain relief.'" Id. (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferber Corp. of Cal., 522 U.S. 192, 201 (1997)). In other words, "[a] section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).

Plaintiff did not have to file his claim in the Court of Common Pleas or advance

an administrative claim before he could raise his claim under Section 1983.

"Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court." Porter v. Nussle, 534 U.S. 516, 523 (2002). Indeed, "[t]he Supreme Court has consistently noted that exhaustion of state remedies, whether judicial or administrative, is not required prior to the commencement of an action under 42 U.S.C. § 1983 in federal court." Hochman v. Board of Education, 534 F.2d 1094, 1096 (3d Cir. 1976). The aim of Section 1983 is to offer a remedy in federal court for plaintiffs whose civil rights are violated "'supplementary to any remedy any State might have.'" Id. (quoting Monroe v. Pape, 365 U.S. 167, 183 (1961)). Part of the reason for this rule was Congress's recognition of the central role of federal courts in protecting federal constitutional rights. Id.

Plaintiff's claim arises under Section 1983 and alleges violations of his constitutional rights. Accordingly, he could have brought his claim in federal court even as his action in state court to secure his benefits proceeded. See Monroe, 365 U.S. at 183 (holding that "[t]he federal remedy" in a Section 1983 action "is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."). The statute of limitations begins to run when the action that causes plaintiff's alleged damage occurs, not when a state or administrative procedure to address those damages terminates. See Delaware State College v. Ricks, 449 U.S. 250, 261 (1980) (finding that plaintiff's claim, filed

11

after the conclusion of a grievance procedure examining a decision that denied him tenure was untimely because "the grievance procedure, by its nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made."). Accordingly, "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." Ricks, 449 U.S. at 261.

Defendants sought dismissal of plaintiff's claims on statute of limitations grounds in their motions to dismiss. They pointed out that the denials of pension claims about which plaintiff complained had occurred from the end of 2002 until April of 2004, when the Board finally denied plaintiff's claim. Plaintiff then filed an action in state court to reverse that decision. At its latest, then, plaintiff had knowledge of his injury and its source in April 2004. As plaintiff pointed out in his brief, "it was now clear, on April 22, 2004, the Defendants Mayor, President of the City Council, Controller and their improperly authorized representatives acting under color of law as the illegally composed Non-Uniform Pension Board, along with gross negligence and dilatory tactics of the Local Agency Solicitor, were operating to deny Schimes his property right without due process." (Brief in Opposition to Defendants' Motion to Dismiss (Doc. 11) at 22-23). Since plaintiff did not file suit until May 14, 2007, the statute of limitations appeared to have run on plaintiff's claim related to the Board's decisions.

The court concluded, however, that the continuing violation doctrine saved

plaintiff's claim from dismissal at that early stage. That doctrine provides "an 'equitable exception to the timely filing requirement.'" <u>Cowell v. Palmer Twp.</u>, 263 F.3d 286, 292 (3d Cir. 2001) (quoting <u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 754 (3d Cir. 1995)). By the terms of the doctrine, "'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.'" <u>Id.</u> (quoting <u>Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.</u>, 927 F.2d 1283, 1295 (3d Cir. 1991)). To fit within the doctrine, a defendant's actions must be "'more than the occurrence of isolated or sporadic acts.'" <u>Id.</u> (quoting <u>West</u>, 45 F.3d at 755)). Courts utilize three factors to determine whether the acts complained of qualify: "(1) subject matter–whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency–whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence–whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of continuing intent to discriminate."[1] <u>Id.</u> Once a plaintiff establishes that the doctrine

---

[1]The third of these factors requires a court to "consider the policy rationale behind the statute of limitations. That is, the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." <u>Cowell</u> 263 F.3d at 295.

applies and that one violation occurred within the period established by the statute of limitations, a plaintiff may then "offer evidence of, and recover for, the entire continuing violation." West, 45 F.3d at 755. Courts have applied this doctrine in the context of Section 1983 claims. See Centifanti v. Nix, 865 F.2d 1422, 1432-33 (3d Cir. 1989) (finding that plaintiff's Section 1983 claim seeking reinstatement to the bar in Pennsylvania was not barred by the statute of limitations because "[plaintiff] remains suspended from the practice of law, and thus he alleges what is in essence a continuing wrong."); Cowell, 263 F.3d at 293 n.5 (establishing that the continuing violations "doctrine is an equitable one and requires a factual analysis that will be different in each case."). Plaintiff had alleged that a series of violations was ongoing past the final decision of the City to deny plaintiff a pension. The court found that these allegations were sufficient to survive a motion to dismiss.

Defendants raise the issue again now that discovery has concluded. Rather than address defendants' arguments on the matter, plaintiff argues that the court is barred by the law of the case doctrine from granting defendants' motions on these grounds. The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). The doctrine applies "'to issues that were actually discussed by the court in the prior appeal [and] to issues decided by necessary implication." Schultz v. Onan Corp., 737 F.2d 339, 345 (3d Cir. 1984) (quoting Todd & Co., Inc. v. S.E.C., 637 F.2d 154,

157 (3d Cir. 1980)).

The court agrees with the defendants that the law-of-the case doctrine does not apply to this issue.[2] The court's earlier decision addressed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). That decision concluded that the *allegations* raised by the defendant were sufficient to state a claim against defendants. The current issue before the court is whether plaintiff has produced *evidence* sufficient to survive defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The court must conclude a reasonable juror could find for the non-moving party. The law-of-the-case doctrine therefore does not apply in this instance. See Schultz, 737 F.2d at 346 (finding that the law-of-the-case doctrine did not apply because the "court did not, however, address the sufficiency of the evidence to sustain an application" of the rule of law previously provided). The plaintiff must therefore demonstrate that evidence exists by which a reasonable juror could conclude that the continuing violations doctrine applies to this case.

Plaintiff points to two instances where he claims the continuing violation doctrine still applies. On July 27, 2005, the Pension Board voted to deny plaintiff's pension application. On January 27, 2006, the City appealed to the Commonwealth Court rather than award plaintiff a pension. The court finds that plaintiff's claims are not barred by the statute of limitations. Plaintiff's complaint is that the City and its

---

[2]The defendant raises the same law-of-the-case argument in relation to each part of the defendants' motions. The court rejects the plaintiff's arguments on those matters for the same reason that the court rejects the argument here.

Pension Board denied his pension benefits for improper reasons. While he was first aware of that denial outside of the statute of limitations, evidence exists by which a jury could conclude that the actions about which plaintiff complains continued to occur as late as July 2005, when the pension board again voted to deny him his benefits. Since the complaint is about decisions denying plaintiff his benefits, the court will deny the motion for summary judgment on these grounds.

**ii. Substantive Due Process**

Defendants argue that summary judgment should be granted them on plaintiff's substantive due process claim. They argue that denying plaintiff a pension from public employment does not constitute a protected property interest to which due process protection would apply. Moreover, they insist, none of the conduct cited by the defendants rises to the level of a violation of plaintiff's substantive due process rights, if he has them.

The court will grant the defendants' motion on this claim. Even assuming that plaintiff has a protected property interest in his pension, he has not produced any evidence of conduct by the defendants that would rise to the level of a substantive due process violation. The standard of proof for a violation of substantive due process rights is a high one. The Supreme Court has emphasized that "the cognizable level of executive abuse of power [is] that which shocks the conscience." City of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). Only conscience-shocking behavior entitles a plaintiff to relief in the Fourteenth Amendment context. Behavior

which could be characterized as negligent does not rise to the level of a constitutional violation under this standard: "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849.

As evidence of his substantive due process claim, plaintiff points to a number of decisions made by the board, including adoption of ordinances, "continuously taking the groundless position that plaintiff had to be age 55 to buy pension time; twice voting to deny his pension application; and, appealing the Common Pleas decision awarding him relief . . . rather than granting his application." (Plaintiff's Brief at 5). Plaintiff goes on to argue that state courts disagreed with defendants' position and granted him summary judgment, and that defendants continued to hold erroneous positions throughout this litigation.

At best, the evidence cited by the plaintiff indicates that City officials took positions on contract law that were legally wrong. He points to no evidence that indicates that they took these positions for an improper reason, such as a desire to discriminate against the plaintiff or to injure him in some unjustifiable manner. He also provides no evidence that any defendant took the legal position they did in bad faith or from a desire to injure. A jury could not conclude that such behavior shocked the conscience. The city's position, supported by advice from its solicitor, was that plaintiff was not eligible for a pension under their 2002 offer. Lower courts concluded that the City was wrong, and the City appealed. While plaintiff was

ultimately vindicated, the fact that the city acted in what it perceived to be its legal and financial interests does not demonstrate the sort of egregious conduct that would shock the conscience.  To rule otherwise would be to make a city liable to substantive due process claims every time it made an incorrect legal decision.  The court will grant the defendants' motions on this claim.

### iii.  Equal Protection

Defendants argue that plaintiff cannot prevail on his equal protection claim. They contend that "class of one" equal protection claims do not apply in the public employment context.  Even if they did, defendants claim, plaintiff can present no evidence to establish that he was treated differently from any similarly situated individuals.

Under the "class of one" doctrine, a plaintiff may obtain relief for equal protection violations "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The Third Circuit has held that a plaintiff asserting a "class of one" claim "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

Defendant argues that recent decisions preclude plaintiff from making out

such a claim in this context.  The Supreme Court has recently found that "the class-of-one theory of equal protection–which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review–is simply a poor fit to the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns.  Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship.  A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action." Enguist v. Oregon Department of Agriculture, 553 U.S. 591, 128 S.Ct. 2146, 2155 (2008).   Thus, "the class-of-one theory of equal protection does not apply in the public employment context." Id. at 2151.

The plaintiff's claims are based on his municipal employment.  He therefore cannot prevail on his class-of-one claim, and the court will grant defendants' motions on these grounds.  See, e.g., DeWees v. Haste, 620 F. Supp. 2d 625, 638 (M.D. Pa. 2009) (finding that plaintiff could not make out a class-of-one claim because "plaintiff's claims are predicated entirely on his employment (and the ultimate termination thereof) with a municipal employer."); Conrad v. Pa. State Police,No. 09-1837, 2010 U.S. App. LEXIS 532, *3-4 (3d Cir. January 11, 2010) (finding that plaintiff's class-of-one claim was foreclosed by Enquist, because such a claim "is not applicable to the public employment context.").

Even if plaintiff's claim were not precluded in this fashion, the court would grant defendants' motions on this issue. Plaintiff's contention is that he was treated differently from other, similarly situated employees because he was not allowed to purchase service time to meet the requirements for retirement under the City's one-time offer. Plaintiff admits, however, that he cannot point to any other workers who, like him, could only retire if they purchased extra service time and were allowed to do so, and retired. As explained above, five other workers were likewise denied a pension for the same reason plaintiff was. They likewise were able to retire after plaintiff pressed his legal action. As there was no differential treatment, there can be no "class-of-one" claim. The court will grant defendants' motions on this claim.

### iv. Other Grounds

The court has found that plaintiff's constitutional rights were not violated by the defendants' actions. As such, neither plaintiff's conspiracy claim nor his claims against the individual defendants have merit. Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) ("To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'") (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). In addition, since no constitutional violation occurred, no claims for municipal liability can exist. Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (finding that liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional

deprivation.'") (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989). The court will therefore grant all of the defendants' motions for summary judgment.

**Plaintiff's Motion**

### i. Due Process

Plaintiff contends that the court should grant him summary judgment on his substantive due process claim. The court has already granted the defendants summary judgment on this claim, and thus will deny plaintiff's motion on this claim.

### ii. Impairment of Contract Claim

Plaintiff contends that he is entitled to summary judgment on his claim that the City unlawfuly impaired his vested right to receive pension benefits, thus violating the impairment of contracts clause, United States Constitution, Article I, § 10. That clause "provides that 'no state shall . . . pass any Law impairing the Obligation of Contracts.'" <u>Larsen v. Senate of the Commonwealth</u>, 154 F.3d 82, 88 (3d Cir. 1998) (quoting U.S. CONST., ART. I, § 10). A party seeking to prevail on such a claim "must demonstrate that a 'change in state law has 'operated as a substantial impairment of a contractual relationship.'" <u>Transport Workers Union, Local 290 v. SEPTA</u>, 145 F.3d 619, 621 (3d Cir. 1998) (quoting <u>General Motors Corp. v. Romein</u>, 503 U.S. 181, 186 (1992)). The court must discern "(1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial." <u>Id.</u> Once these elements are met, "the court must further inquire whether the law at issue has a legitimate and important public

purpose and whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose." Id.

The plaintiff contends that the City violated his vested contractual right when it adopted Ordinance 131 on February 25, 2003. This ordinance required twenty-five years of actual employment before a worker could retire, thus making it impossible for plaintiff to purchase time and obtain his retirement. Plaintiff had earlier accepted the offer to take early retirement offered by the city, based on his ability to purchase additional service time under the agreement between the City and his union. The defendants respond by arguing that summary judgment should be granted them on the impairment of contract claim. They argue that there was no contract between the City and plaintiff regarding the one-time 2002 offer, and thus adoption of the new ordinance did not interfere with that contract. In any case, they insist, plaintiff has received his contractual benefits, and he therefore cannot make out a claim.

The court agrees with the defendant that plaintiff could not prevail on his contract clause claim. The ordinance did not interfere with any contract that existed between the parties, as determined later by the courts. In the Court of Common Pleas of Lackawanna County, Pennsylvania, Judge Cottone concluded that "[t]he offer extended to the non-uniformed City employees, and which was the offer accepted by Mr. Shimes, did not require actual service." (Exh. 12 to Plaintiff's Statement (Doc. 61) at 7). Thus, regardless of any later, "materially different" ordinance passed by the City, plaintiff was eligible to purchase service time and

receive a pension.  (Id.).  The Pennsylvania Commonwealth Court upheld this decision, concluding that plaintiff "had over twenty-one years of service, there was a provision that he could purchase additional time after serving said years of service, and the early retirement option did not state that [plaintiff] was precluded from purchasing time in order to reach the twenty-year threshold."  (Exh. 13 to Plaintiff's Statement (Doc. 61) at 10).  Neither court concluded that the February 2003 ordinance, which took effect after plaintiff accepted the offer for early retirement, in any way interfered with the plaintiff's contract for retirement.  That plaintiff had to go to court to prove his contract claim against the City is a different question, and one not material to whether a later ordinance interfered with his contract.  Thus, plaintiff could not prevail by arguing that the ordinance interfered with a contractual right, as he has no evidence that the ordinance caused a "substantial impairment in the contractual relationship."  Transport Workers Union, 145 F.3d at 621.  Litigating the existence of contract is different from "enter[ing] into any . . . Law impairing the Obligation of Contracts."  Id. (quoting U.S. Const. Art. I, § 10).  The court will deny the plaintiff's motion on these grounds as well, and will grant defendants judgment on this claim.

**Conclusion**

For the reasons stated above, the court will grant the defendants' motions for summary judgment and deny the plaintiff's.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH SCHIMES,** | : | No. 3:07cv872 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS BARRETT,** | : | |
| **ROSEANN NOVEMBRINO,** | : | |
| **OFFICER JAY SAUNDERS,** | : | |
| **LEN KRESEFSKI,** | : | |
| **JERRY PHILLIPS,** | : | |
| **KATHLEEN RUANE,** | : | |
| **SHERRY FANUCCI,** | : | |
| **CITY OF SCRANTON NON** | : | |
| **UNIFORM PENSION BOARD,** | : | |
| **CITY OF SCRANTON,** | : | |
| **MICHAEL SAVITSKY, and** | : | |
| **MARGOLIS EDELSTEIN,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 30th day of March 2010, the defendants' motions for summary judgment (Docs. 52, 56) are hereby **GRANTED** as to all of plaintiff's claims. Plaintiff's motion for summary judgment (Doc. 60) is hereby **DENIED**. The Clerk of Court is directed to **CLOSE** the case.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**